**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| (1) TOBY BAUTER and<br>(2) CYNTHIA BAUTER, | ) ) ) | |
| Plaintiffs, | ) ) | Case No.:  CIV-26-191-JAR |
| vs. | ) ) | JURY TRIAL DEMANDED |
| (3) 1845 BARNDOMINIUMS, LLC,<br>a Texas limited liability company, | ) ) ) ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiffs Toby Bauter and Cynthia Bauter ("Plaintiffs" or "Bauters"), by and through the undersigned counsel, for their Complaint against Defendant 1845 Barndominiums LLC ("1845" or "Defendant"), state and allege as follows:

## PARTIES

1.    Plaintiff Toby Bauter is an individual residing in Pushmataha County, Oklahoma.

2.    Plaintiff Cynthia Bauter ("Cindy Bauter") is an individual residing in Pushmataha County, Oklahoma.

3.    Defendant is a Texas limited liability company with its principal place of business in Texas, regularly conducting business in the State of Oklahoma, including soliciting Oklahoma customers and engaging in construction-related services and representations directed at Oklahoma residents.

## JURISDICTION AND VENUE

4.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because this is a civil action between citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. Plaintiffs are citizens of the State of

Oklahoma. Defendant is a citizen of the State of Texas by virtue of its formation as a Texas limited liability company and its principal place of business in Texas.

5.      Venue is proper in the Eastern District of Oklahoma pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to this action occurred in this district, and the real property at issue, 444756 E. 1615 Road, Albion, Oklahoma 74521 (the "Property"), is situated in Pushmataha County, which lies within this district.

6.      Oklahoma law governs this action. Although the construction contract between Plaintiffs and non-party Lawrence Construction, Inc. ("Lawrence Construction") contains a Texas choice-of-law clause, that clause is not binding on Plaintiffs' claims against 1845, which was not a signatory to the contract, and Oklahoma has the most significant relationship to the parties and transactions at issue. The Property is in Oklahoma, Plaintiffs are Oklahoma residents, and 1845's tortious conduct and misrepresentations were directed into Oklahoma. Oklahoma's consumer protection statutes, tort law, and public policy govern. Oklahoma courts will apply Oklahoma law to claims arising from construction on Oklahoma real property. To the extent a conflict-of-laws analysis is required, Plaintiffs expressly invoke Oklahoma law under Okla. Stat. tit. 12 § 95 and the Restatement (Second) of Conflict of Laws §§ 145, 187-188.

**FACTUAL BACKGROUND**

7.      Plaintiffs are the owners of the Property, where they planned to construct a custom barndominium-style home as their primary residence. Plaintiffs sought a reliable, turnkey construction solution.

8.      1845 is in the business of marketing, designing, and selling turnkey barndominium construction services throughout multiple states. 1845 promotes itself as a builder and general contractor, markets completed custom homes as "our builds," and advertises that it has constructed

thousands of homes. 1845's website, videos, and marketing materials repeatedly refer to "our build," "our procedures," "our turnkey process," and "The 1845 Way," creating the reasonable impression that 1845 was the builder or general contractor responsible for the project. 1845's marketing materials prominently feature turnkey services, stating "EASE STRESS! LET US HANDLE EVERYTHING!" and "WE'VE BUILT THOUSANDS OF HOMES. SIT BACK AND RELAX. WE GOT THIS!"

9.      Plaintiffs had researched and followed 1845 for years before engaging its services, attracted by the quality of its completed builds and its turnkey model.

10.     In approximately June 2024, Cindy Bauter first contacted 1845 about building a turnkey home on the Property. At that time, 1845 did not offer turnkey services in southeastern Oklahoma.

11.     In August 2024, 1845's representative Charlie Downs informed Cindy Bauter that 1845 had expanded its turnkey build operations to the Ozark region, including southeastern Oklahoma.

12.     On or about December 26, 2024, 1845 published a podcast publicly announcing its partnership with Lawrence Construction for turnkey builds in the Ozark region, including Oklahoma, Arkansas, and Missouri. 1845 owner Cody Holloway stated on that podcast that 1845 works "hand-in-hand" with its partner builders to ensure the quality standards associated with the 1845 brand.

13.     Throughout late 2024 and early 2025, 1845 represented to Plaintiffs that Lawrence Construction was 1845's vetted and selected partner builder and was assigned to the Plaintiffs' project as 1845's designated contractor. Plaintiffs did not independently find or hire Lawrence

Construction; they were assigned Lawrence Construction by 1845 as part of the turnkey build process. 1845 exercised exclusive control over builder selection.

14.     In August 2024, Charlie Downs provided Plaintiffs with an initial build bid bearing the 1845 logo. In February 2025, another 1845 representative, Jennifer Ford, updated the bid. On or about March 30, 2025, 1845 passed the bid sheet and draw schedule to Hank Lawrence of Lawrence Construction.

15.     On or about February 4, 2025, Charlie Downs stated he would finalize "all our cost numbers" with "hard bids on our mechanical trades," and that Hank Lawrence "will be gathering all of our bids." 1845 consistently used collective language, including "our builds," "our procedures," "our cost numbers," that obscured any distinction between 1845 and Lawrence Construction and reinforced the impression of a unified, 1845-managed turnkey project.

16.     On or about March 28, 2025, 1845 emailed Plaintiffs: "We will look over changes and make sure nothing will affect the budget. We are almost ready to get this dream home started!"

17.     In March 2025, Cindy Bauter inquired of 1845 about the contract for the build and asked for a "standard 1845 contract." 1845 did not clarify it was not the contracting party, nor that the build contract would be solely between Plaintiffs and Lawrence Construction. Hank Lawrence subsequently sent the contract to Cindy Bauter, copying Charlie Downs and Jennifer Ford of 1845. Hank Lawrence told Plaintiffs he would use "the one from 1845." The contract itself, using a form consistent with 1845's process, contains, at Section E.2.a, the express provision that final payment shall be made "according to Draw Schedule provided by 1845 Construction," confirming 1845's financial control over the project.

4

18.     On April 8, 2025, Jennifer Ford of 1845 sent final construction plans to both Cindy Bauter and Hank Lawrence and asked both to review for corrections before materials were ordered. This communication confirmed 1845's active oversight and involvement as project lead.

19.     The bid sheet and draw schedule generated and finalized by 1845 bore the 1845 logo throughout the project. Lawrence Construction ordered project materials, including structural steel and exterior metal siding, through 1845, placing 1845 in direct control of material procurement.

20.     In April 2025, Charlie Downs visited the Property to document and videotape the build for 1845's marketing. Charlie Downs gave Hank Lawrence 1845-branded merchandise including shirts and hats. 1845 marketed the build as an 1845 project. Charlie Downs continued to visit the project to video and oversee progress through mid-2025.

21.     In approximately August 2025, Charlie Downs left 1845's employ. 1845 never notified Plaintiffs of this departure, never assigned a replacement representative to oversee the project, and never conducted any audit of the work.

22.     In mid-to-late 2025, construction progress fell behind schedule, materials specifications were not being met, and problems with the work became apparent. Plaintiffs had reported problems to Charlie Downs on a regular basis. The wrong exterior metal siding was delivered to the Property. Lawrence Construction stated 1845 ordered incorrect R-panel siding rather than the agreed board-and-batten specification, resulting in an approximately $15,000 cost discrepancy. 1845 and Lawrence Construction disputed responsibility for this error.

23.     Work operations ceased on the Property on or about November 19, 2025. The home was left partially constructed, exposed to the elements, and incapable of occupancy. As a direct and foreseeable result of 1845's failure to supervise, failure to intervene, and failure to ensure

competent builder performance, the project was left exposed to the elements, and the structure sustained serious damage including black mold, rot, and burst plumbing pipes, among other defects.

24.    On January 16, 2026, Hank Lawrence sent Plaintiffs an email from a noreply address announcing that Lawrence Construction was ceasing all operations immediately and would not complete the Plaintiffs' project. Lawrence Construction owners, Harold and Christy Lawrence, subsequently filed a voluntary Chapter 13 bankruptcy petition in the United States Bankruptcy Court, Western District of Arkansas, Harrison Division (Case No. 3:26-bk-70232), and listed Toby and Cindy Bauter as creditors.

25.    On January 21, 2026, Cody Holloway, owner of 1845, spoke with Cindy Bauter by phone and stated he "should have been more involved in the project." Holloway offered to sell replacement siding at cost and offered to visit the Property. He also disclosed to Plaintiffs the names of other 1845 customers, including Ed and Janell Cook, whose projects were similarly abandoned by Lawrence Construction after 1845 assigned Lawrence Construction to those projects as well. 1845 subsequently agreed to assist the Cooks in completing their project, demonstrating 1845's acknowledgment of responsibility for the consequences of its partnership with Lawrence Construction.

26.    Multiple subcontractors hired by Lawrence Construction have not been paid for work performed on the Property, including HVAC, electrical, plumbing, and roofing subcontractors. One subcontractor has already filed suit against Plaintiffs as property owners. Plaintiffs' payments to Lawrence Construction included budgeted amounts designated to pay these subcontractors, which were not remitted. 1845's control over the draw schedule and procurement

created a duty to ensure that funds were properly applied. Plaintiffs' payments designated for subcontractors were not used for that purpose.

27.    Plaintiffs paid a total of $360,634.57 to Lawrence Construction in installments through October 2025, plus separate payment to 1845 for construction plans. The total contracted price was $543,910.53 (as reflected in the bid sheet bearing 1845's logo), leaving a remaining project fund of approximately $109,437.96. Plaintiffs also purchased approximately $25,200 in allowance items for the build. The project remains largely incomplete and uninhabitable.

28.    Plaintiffs' total damages, including the cost to complete and repair the project, amounts paid for work not performed or performed deficiently, subcontractor lien exposure, delay damages, loss of use, and out-of-pocket costs, exceed $75,000.00, with the exact amount to be proven at trial.

## CAUSES OF ACTION

### COUNT I - FRAUDULENT MISREPRESENTATION

29.    Plaintiffs re-allege and incorporate by reference all prior allegations.

30.    1845 made material representations of fact to Plaintiffs, including but not limited to: (a) that 1845 offered a full turnkey construction service in southeastern Oklahoma; (b) that Lawrence Construction was 1845's vetted, selected, and trusted partner builder assigned to the Plaintiffs' project; (c) that 1845 would oversee and manage the project process, including scheduling, bidding, materials procurement, and quality; (d) that 1845's brand and standards of quality would be applied to the Plaintiffs' project; and (e) that the project would be completed as a turnkey home for the contracted price.

31.    These representations were false. 1845 did not maintain adequate oversight of Lawrence Construction, failed to ensure that Lawrence Construction was qualified and licensed

for the work, failed to supervise the project, and was aware of, or recklessly indifferent to, Lawrence Construction's inability to complete the project and pay its subcontractors. Lawrence Construction was not licensed to perform residential construction in Oklahoma, a fact that 1845 failed to investigate, verify, or disclose to the Plaintiffs.

32.    1845 knew the representations were false, or made them recklessly without knowledge of their truth, including with respect to the capability, vetting, and reliability of Lawrence Construction and 1845's ability and intention to fulfill its turnkey model obligations.

33.    1845 made these representations with the intent that Plaintiffs would rely on them to enter into and continue with the turnkey build process and pay substantial sums accordingly.

34.    Plaintiffs justifiably relied on 1845's representations. Plaintiffs would not have engaged 1845 or its assigned builder, or paid the sums they paid, absent those representations.

35.    As a direct and proximate result of 1845's fraudulent misrepresentations, Plaintiffs have suffered actual damages in an amount to be proven at trial. Plaintiffs are entitled to compensatory and punitive damages.

### COUNT II - NEGLIGENT MISREPRESENTATION

36.    Plaintiffs re-allege and incorporate by reference all prior allegations.

37.    1845, in the course of its business of providing barndominium design and construction facilitation services, supplied false information to Plaintiffs regarding its role, its partnership with Lawrence Construction, the nature of the turnkey services offered, and its oversight of the project.

38.    1845 failed to exercise reasonable care or competence in obtaining or communicating this information, including failing to adequately vet Lawrence Construction,

8

failing to verify Lawrence Construction's licensing, qualifications, and financial capacity, and failing to disclose known risks.

39.    Plaintiffs justifiably relied on 1845's representations in entering into the build process and making payments, and suffered pecuniary loss as a proximate result.

40.    Plaintiffs are entitled to damages for all losses caused by their reliance on 1845's negligent misrepresentations.

## COUNT III - NEGLIGENCE / NEGLIGENT HIRING, RETENTION, AND SUPERVISION

41.    Plaintiffs re-allege and incorporate by reference all prior allegations.

42.    1845 owed Plaintiffs a duty of reasonable care in the selection, vetting, hiring, retention, and supervision of Lawrence Construction as its partner builder for the Plaintiffs' project. This duty arose from 1845's turnkey model, its representations to Plaintiffs, its assignment of Lawrence Construction to the project, and its ongoing involvement in and oversight of the project.

43.    1845 breached this duty by, among other things: (a) selecting and assigning Lawrence Construction without adequately investigating its qualifications, licensing, financial stability, or track record; (b) failing to verify that Lawrence Construction held the required contractor's license to perform residential construction in Oklahoma; (c) failing to adequately supervise Lawrence Construction's work and finances during the project; (d) failing to take corrective action when project problems became apparent; and (e) abandoning its oversight role after Charlie Downs departed in August 2025 without notifying Plaintiffs or assigning a replacement.

44.    As a direct and proximate result of 1845's negligence, Plaintiffs suffered the damages described herein.

**COUNT IV - BREACH OF CONTRACT (ALTERNATIVE / IMPLIED CONTRACT)**

45.    Plaintiffs re-allege and incorporate by reference all prior allegations.

46.    In the alternative, and to the extent the Court finds a direct contractual relationship between Plaintiffs and 1845, Plaintiffs allege breach of contract. Through the course of its conduct, representations, and involvement, including preparing and updating the bid sheet, providing the draw schedule expressly incorporated into the construction contract, controlling material procurement, assigning Lawrence Construction to Plaintiffs' project, and actively participating in and overseeing the project, 1845 entered into an agreement with Plaintiffs to provide turnkey construction facilitation services, including adequate oversight of the build and the builder assigned to it.

47.    1845 materially breached this agreement by failing to maintain project oversight, failing to ensure Lawrence Construction performed in accordance with contract specifications and applicable law, and failing to step in and ensure project completion when Lawrence Construction abandoned the project.

48.    Plaintiffs have suffered damages as a direct and proximate result of 1845's breach.

**COUNT V - VIOLATION OF THE OKLAHOMA CONSUMER PROTECTION ACT**
**(Okla. Stat. tit. 15 § 751 et seq.)**

49.    Plaintiffs re-allege and incorporate by reference all prior allegations.

50.    The Oklahoma Consumer Protection Act ("OCPA"), Okla. Stat. tit. 15 § 751 et seq., prohibits unfair or deceptive trade practices in the conduct of trade or commerce, including misrepresentations as to the characteristics, nature, quality, and extent of services offered.

51.    1845 engaged in trade or commerce in Oklahoma by actively marketing and selling its turnkey construction services to Oklahoma residents, including the Plaintiffs.

52.    1845 engaged in the following unfair and deceptive trade practices in violation of the OCPA, including but not limited to:

(a)    Representing that its services included genuine turnkey construction oversight and management when in fact 1845 did not maintain adequate oversight or control over the build;

(b)    Misrepresenting the nature, quality, and extent of its partnership with Lawrence Construction and its ability to ensure build quality and completion;

(c)    Representing that Lawrence Construction was a vetted and qualified partner builder without adequate basis for that representation;

(d)    Failing to disclose that Charlie Downs had departed 1845 and that no replacement oversight had been assigned for Plaintiffs' project;

(e)    Advertising and representing a turnkey service that included comprehensive management of the build process, while failing to deliver that level of service; and

(f)    Engaging in conduct that created a likelihood of confusion or misunderstanding as to 1845's role, responsibilities, and the services being provided.

53.    Plaintiffs are consumers as defined by Okla. Stat. tit. 15 § 752(2) and engaged in a consumer transaction with 1845.

54.    Plaintiffs have satisfied all conditions precedent to this action, including the notice requirements of Okla. Stat. tit. 15 § 765.6.

55.    As a direct and proximate result of 1845's violations of the OCPA, Plaintiffs suffered actual damages. Pursuant to Okla. Stat. tit. 15 § 761.1, Plaintiffs are entitled to actual damages, and because 1845's conduct was willful and knowing, Plaintiffs are additionally entitled to a civil penalty of up to $10,000 per violation, and reasonable attorney fees and costs.

11

**COUNT VI - BREACH OF FIDUCIARY DUTY / CONSTRUCTIVE FRAUD**

56.    Plaintiffs re-allege and incorporate by reference all prior allegations.

57.    Through the course of the parties' relationship, 1845 cultivated a relationship of trust and confidence as a turnkey home contractor and construction manager, exercised control over the project process and financial draw schedule, assigned the builder, and encouraged Plaintiffs to repose special confidence and trust in 1845's oversight and management. 1845 affirmatively cultivated this relationship of trust and confidence, including through its "1845 Family" brand messaging, personal communications about Plaintiffs' specific needs and circumstances, and its promise to handle "everything."

58.    To the extent a confidential or quasi-fiduciary relationship existed between Plaintiffs and 1845, 1845 breached its duties by misrepresenting the nature of its services, failing to disclose material facts (including Charlie Downs' departure and Lawrence Construction's financial distress), and failing to exercise the care and loyalty owed to Plaintiffs.

59.    1845's breaches proximately caused Plaintiffs' damages. Plaintiffs are entitled to compensatory and exemplary damages.

**COUNT VII - UNJUST ENRICHMENT**

60.    Plaintiffs re-allege and incorporate by reference all prior allegations, pled in the alternative.

61.    Plaintiffs paid 1845 for construction plans and engaged 1845's services based on 1845's representations regarding the scope and quality of those services. 1845 received payments and the benefit of Plaintiffs' engagement without providing the services and oversight it represented it would provide.

12

62.    It would be inequitable and unjust for 1845 to retain the benefit of Plaintiffs' payments and reliance without compensating Plaintiffs for the resulting losses.

63.    Plaintiffs are entitled to restitution and disgorgement in an amount to be proven at trial.

## COUNT VIII - AGENCY BY ESTOPPEL / APPARENT AUTHORITY

64.    Plaintiffs re-allege and incorporate by reference all prior allegations.

65.    1845's marketing, conduct, representations, and ongoing involvement created the appearance of authority such that a reasonable person in Plaintiffs' position would believe that Lawrence Construction was acting as 1845's agent and that 1845 had authorized and would stand behind Lawrence Construction's performance on the project.

66.    Plaintiffs reasonably relied on this appearance of authority in entering into the build process, continuing to make payments, and refraining from independently vetting or contracting with alternative builders.

67.    1845 is estopped from denying responsibility for Lawrence Construction's failures and is liable for the resulting damages to Plaintiffs under principles of apparent authority and agency by estoppel.

## COUNT IX - GROSS NEGLIGENCE

68.    Plaintiffs re-allege and incorporate by reference all prior allegations.

69.    1845's conduct, as described herein, constituted gross negligence, a reckless disregard for the rights and safety of others. Specifically, 1845 held itself out as a full-service turnkey provider, assigned an inadequately vetted and unlicensed contractor to Plaintiffs' project, failed to conduct any meaningful oversight despite knowing problems existed, failed to notify

Plaintiffs of the departure of the designated project representative, and allowed the project to collapse while Plaintiffs continued to make substantial payments.

70. This conduct demonstrates a conscious indifference to the consequences for Plaintiffs and supports an award of punitive or exemplary damages under Okla. Stat. tit. 23 § 9.1.

## DAMAGES

As a direct and proximate result of 1845's wrongful conduct, Plaintiffs have suffered the following damages, in amounts to be proven at trial but believed to substantially exceed the jurisdictional threshold:

a) Return of all amounts paid for services not rendered or rendered deficiently;

b) Cost to complete the project in accordance with the original specifications;

c) Cost to repair all defective work;

d) Costs and exposure arising from unpaid subcontractor claims, liens, and litigation;

e) Delay damages and loss of use of the Property;

f) Cost of allowance items purchased and now at risk due to project abandonment (including appliances stored with expiring warranties);

g) Non-economic damages, including emotional distress, loss of peaceful enjoyment of property, and the stress and hardship caused by the failure of this project;

h) Punitive and exemplary damages based on 1845's fraudulent, knowing, and reckless conduct;

i) Civil penalties under the OCPA, Okla. Stat. tit. 15 § 761.1;

j) Reasonable attorney fees and costs; and

k) All other relief, in law or in equity, to which Plaintiffs may be entitled.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Toby Bauter and Cynthia Bauter respectfully pray for judgment against Defendant 1845 Barndominiums LLC as follows:

1. Actual and compensatory damages in an amount to be proven at trial;

2. Punitive and exemplary damages pursuant to Okla. Stat. tit. 23 § 9.1 for 1845's fraudulent, knowing, and/or grossly negligent conduct;

3. Civil penalties under the Oklahoma Consumer Protection Act, Okla. Stat. tit. 15 § 761.1;

4. Reasonable attorney fees and costs of this action;

5. Pre-judgment and post-judgment interest as allowed by law; and

6. Such other and further relief as this Court deems just and equitable.


Respectfully submitted,


/s *Rhiannon K. Thoreson*
Brian Mitchell, OBA No. 19529
Rhiannon Thoreson, OBA No. 22748
Mitchell Legal PLLC
203 East Hobson Avenue
Sapulpa, Oklahoma 74066
Telephone: (918) 248-2268
Facsimile: (918) 248-2290
bmitchell@mitchelllegalpllc.com
rthoreson@mitchelllegalpllc.com
***Attorneys for Plaintiffs***

15